UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JEREMIAS HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>KELLIE WASKO, Former Secretary of Corrections at South Dakota D.O.C., individual capacity; NICK LAMB, Secretary of Corrections, official capacity; DR. AARON HAYNES, Correctional Health at South Dakota D.O.C., individual and official capacity; STEPHANIE HAMILTON, MDSP, individual and official capacity; NP ELIZABETH PAUL, Nurse Practitioner, MDSP, individual and official capacity; RACHEL TYCZ, Nurse Supervisor at MDSP; ANGIE WATSON, Travel Nurse at MDSP; ABBE DICKEES, Unit Coordinator (AKA, Unit Sergeant) at MDSP; NICHOLE MCDANIEL, Scheduling Person at MDSP,<br><br>Defendants. | 4:25-CV-04215-CCT<br><br>**ORDER DISMISSING IN PART AND DIRECTING SERVICE IN PART ON § 1915A SCREENING** |

Plaintiff, Jeremias Hernandez, an inmate at Mike Durfee State Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This Court granted Hernadez leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee, Docket 5 at 2, which Hernandez timely paid. Hernandez has also filed a motion to appoint counsel. Docket 7. This Court now screens Hernandez's complaint pursuant to 28 U.S.C. § 1915A.

## I.    1915A Screening

### A.    Factual Background as Alleged by Hernandez

On May 18, 2025, Hernandez "woke up with severe back pain." Docket 1 at 4. Around 1:45 p.m., Hernandez discovered that his urine "had a red tint" when he tried to urinate. *Id.* Hernandez's back pain "got pregressively [sic] worse, and [he] was frequesntly [sic] needing to urinate, with a red tint every time, that got progressively worse." *Id.* At 8:00 p.m., Hernandez urinated in a urine analysis cup, and the sample of urine he collected "was more blood than urine, and was the consistancy [sic] of like tomato juice." *Id.* After Hernandez informed correctional officers of his situation, the correctional officers called medical, who instructed Hernandez to place a kite for sick call, because Hernandez "just had a kidney stone." *Id.*

Later that night, Hernandez showed a nurse the urine sample he had collected. *Id.* The nurse informed Hernandez that "it may be Kidney stones, [and] put in a kite for sick call." *Id.* At this point, the pain in Hernandez's back was "unbearable[,]" and he received two Tylenol for his pain. *Id.* When the pain became even worse, Hernandez "notified the desk officers, who called medical, and again were told to tell [Hernandez] to put in a kite, which [he] had already done." *Id.* Hernandez alleges that his "pain was at 10, and it affected [his] ability to walk or even move." *Id.*

The next day, May 19, 2025, at around 1:00 p.m., another inmate brought "the Major"[1] to Hernandez's room and showed him the cup of Hernandez's urine. *Id.* The Major then called medical, and "a few minutes later [Hernandez] was called to medical, and shortly thereafter, was taken to the Hospital in Tyndall." *Id.* 4, 6. At the hospital, Hernandez received a scan and pain medication. *Id.* at 6. He was then informed by a doctor that he had a 7.5-centimeter mass in his kidney, and that this mass "could be cancer." *Id.* Hernandez returned to Mike Durfee State Prison (MDSP), was kept in the infirmary overnight, and then sent back to his housing unit without pain medication. *Id.*

Hernandez alleges that his pain continued, and "got worse from time to time, until June 15," when Hernandez "could not urinate at all, and [his] bladder felt like it was going to burst." *Id.* "After several hours of severe pain, a large blood clot came out, and the pain continued until the 16th [of June]." *Id.* Hernandez was taken to see a urologist in Yankton, South Dakota, after he made "numerous" complaints. *Id.* This urologist informed Hernandez that he had cancer, and that it "needed to be removed as soon as possible." *Id.*

On August 18, 2025, Hernandez was taken to see a specialist in Sioux Falls, who informed Hernandez that he would need to have his kidney removed "very soon before the cancer spreads to other parts of [Hernandez's] body[.]" *Id.* The specialist also informed Hernandez that he would need an MRI. *Id.*

---

[1] Hernandez does not specify who "the Major" is, nor is anyone of this description named as a defendant. Docket 1 at 2, 4–6.

Hernandez was also seen by the provider at MDSP on August 11 and received pain medication. *Id.* Hernandez alleges that the hydrocodone he received "caused blood in [his] stools," and that the provider "suggested that [he] use laxatives," but that he did not receive laxatives. *Id.* Hernandez claims that he "now ha[s] frequent bloody stools, and [is] constipated non stop[,]" but was told that he must buy his own laxatives. *Id.* Until he received the hydrocodone, Hernandez was also told that he needed to buy his own pain medication. *Id.* Hernandez states that his "only choice for pain meds was Tylenol, which [he] had to purchase [himself], but could only get one bottle a month." *Id.* Hernandez alleges that medical staff "seem to enjoy inmate pain and suffering, and regularly deny pain medication to everyone." *Id.*

Additionally, Hernandez alleges other issues he has experienced related to his illness. *Id.* at 7. Hernandez claims that the nurses who diagnosed him with kidney stones "without even seeing him[]" were "practicing beyond their scope[.]" *Id.* He also alleges that various "[a]dministrative 'professionals' have conspired to, in effect, kill [him]." *Id.* Hernandez alleges that "[t]he scheduling clerk has delayed [Hernandez's] appointments from the start," and that the "lack of staff" has caused his trips to appointments and to the hospital to be delayed. *Id.* According to Hernandez, Nichole McDaniel, the scheduling clerk, "failed to get him in the MRI truck which comes to MDSP, for several months." *Id.* Hernandez also claims that "Stephanie Hamilton[] told other nurse staff that [Hernandez] was an illegal alien . . . and that maybe he would die soon." *Id.*

4

Hernandez alleges that his death will ultimately be caused by delays in treatment, as well as a failure to treat him. *Id.*

Hernandez also alleges that due to a language barrier, he was "unable to communicate his medical issues, like severe pain, and the amount of blood in his urine, as well as being able to understand what medical was doing, and why they were not treating him." *Id.* at 8. Hernandez filed a grievance describing his "inability to speak, write, and understand[]" English, and states that he was told he would be provided assistance. *Id.*

Additionally, Hernandez alleges that he "continues to experience severe pain[,]" which has caused him mobility issues. *Id.* Hernandez claims that "health services staff have refused to allow him accommodations for his issues, such as meals to the unit," or providing him with a medical shower accommodation. *Id.* "By failing to provide [Hernandez] an interpreter, and delaying his treatment, the defendants have effectively condemned [Hernandez] to death, and made it impossible for him to defend himself, or clearly express his issues." *Id.*

Hernandez sues Kellie Wasko, the former South Dakota Secretary of Corrections, as well as others employed by the South Dakota Department of Corrections (DOC) and MDSP, including Dr. Aaron Haynes, Stephanie Hamilton, Elizabeth Paul, Rachel Tycz, Angie Watson, Abbe Dicks, and Nichole McDaniels.[2] *Id.* at 2, 5. As relief, Hernandez requests punitive damages and

---

[2] Hernandez also lists as defendants "other persons who are unknown to [him] at this time." Docket 1 at 5. If Hernandez wishes to name additional defendants at a later time, he may do so by filing an amended complaint. Going forward, Hernandez should

compensatory damages for his "filing fees, and expenses in this matter." *Id.* at 9. Hernandez seeks various forms of injunctive and declaratory relief. *Id.* He requests that he receive treatment and a certified interpreter to assist him in communication. *Id.* Additionally, he requests accommodations for his mobility, hygiene, and dietary needs. *Id.* He requests that the Court enter an order declaring that the DOC has violated his rights and requiring the DOC to "reorganize the medical dept. and to stop allowing nurse staff to diagnose issues over the phone, and the up to 7 day wait for sick call[,]" and also that a "special master be appointed to oversee the health service division[.]" *Id.* Further, Hernandez requests that the DOC transport his body to his family in the event of his death. *Id.*

### B.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil

---

be mindful that an amended complaint replaces an original complaint and "renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citation omitted).

rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Hernandez's claims under 28 U.S.C. § 1915A.

C.    **Legal Analysis**

1.    **Course of Proceedings Analysis**

While Hernandez specifies that he sues Wasko, Haynes, Hamilton, and Paul in both their individual and official capacities, Docket 1 at 2, he does not specify in which capacities he sues Tycz, Watson, Dickes, and McDaniel, *id.* at 5. When a plaintiff does not specifically state in which capacity he or she sues the defendants, the Court must apply the course of proceedings test. *S.A.A. v. Geisler*, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" *Id.* at 1139 (quoting *Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." *Id.* Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017); *Briggs*, 66 F.3d at 61. "[N]o single factor is dispositive

8

in an assessment of the course of proceedings." *S.A.A.*, 127 F.4th at 1140 (quoting *Powell v. Alexande*r, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, it appears that Hernandez's omission of the capacities in which he sues Tycz, Watson, Dickes, and McDaniel may have been inadvertent, as he specified that he sued the other defendants in both their individual and official capacities. Therefore, for the sake of completeness and for the purposes of screening, this Court liberally construes Hernandez's complaint to allege claims against Tycz, Watson, Dickes, and McDaniel both in their individual and official capacities.

### 2.    Official Capacity Claims for Monetary Relief

Hernandez sues all defendants in their official capacities and seeks monetary relief. Docket 1 at 2, 5, 9. As employees of the SDDOC, all defendants (Lamb,[3] Haynes, Hamilton, Paul, Tycz, Watson, Dickes, and McDaniel) are employees of the State of South Dakota. *Id.* at 2, 5. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, Hernandez's official capacity claims against the defendants are construed as claims against the State of South Dakota. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a

---

[3] Kellie Wasko is no longer the Secretary of Corrections. In accordance with Federal Rule of Civil Procedure 25(d), Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims.

federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The State of South Dakota has not waived its sovereign immunity. Thus, Hernandez's claims against Lamb, Haynes, Hamilton, Paul, Tycz, Watson, Dickes, and McDaniel in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

### 3.    Individual Capacity Claims for Injunctive and Declaratory Relief

Hernadez also sues defendants in their individual capacities for injunctive and declaratory relief. Docket 1 at 2, 5, 9. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity."); *Abdulrazzak v. Smith*, No. 4:17-CV-04058-KES, 2018 WL 4625409, at *16 (D.S.D. Sep. 26, 2018) ("Declaratory and prospective injunctive relief are available as remedies against a state officer in his or her official capacity." (citing *Pulliam v. Allen*, 466 U.S. 522, 541 (1984))); *Hummel v.*

10

*Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593 (D. Minn. Jan. 2, 2020) (providing that a plaintiff "cannot obtain injunctive or declaratory relief from defendants in their individual capacities[]"). Therefore, Hernandez's request for injunctive and declaratory relief against Wasko, Haynes, Hamilton, Paul, Tycz, Watson, Dickes, and McDaniel in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### 4. Individual Capacity Claims for Monetary Damages and Official Capacity Claims for Injunctive and Declaratory Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation modified). Hernandez's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with

the unconstitutional conduct for which [the plaintiff] seeks injunctive relief."
*Warfield v. Hettich*, No. 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D.
Mar. 31, 2025) (internal quotation omitted) (citing *Ex parte Young*, 209 U.S.
123, 157 (1908)). Hernandez seeks injunctions ordering defendants to provide
him with necessary treatment, an interpreter, and accommodations for his
mobility, hygiene, and dietary needs. Docket 1 at 9. Hernandez also requests
that the Court require "the DOC to reorganize the medical dept. and to stop
allowing nurse staff to diagnose issues over the phone, and the up to 7 day
wait for sick call." *Id.* Therefore, Hernandez has properly alleged claims seeking
injunctive relief, as long as he "necessarily establish[es] a relationship between
the injury claimed in the party's motion and the conduct asserted in the
complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per
curiam).

### a.    Claim Regarding Interpreter

Hernandez alleges that "[b]y failing to provide an interpreter, and
delaying his treatment, the defendants have effectively condemned him to
death[.]" Docket 1 at 8. Liberally construing his complaint, Hernandez is
claiming that he has a constitutional right to an interpreter, which this Court
liberally construes as a Fourteenth Amendment due process claim. *Id.*

"In order to prevail on a Fourteenth Amendment due process claim, [a
plaintiff] must first demonstrate that he was deprived of life, liberty or property
by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003).
But "[t]here is no general constitutional right to an interpreter." *United States v.*

12

*Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *2 (W.D. Mo. Dec. 30, 2015). "Even during a criminal trial, failure to provide an interpreter amounts to a violation of due process only if such failure rendered the trial fundamentally unfair." *Id.* (citing *United States v. Gallegos-Torres*, 841 F.2d 240, 242 (8th Cir. 1988)). Therefore, to the extent that Hernandez is alleging that the failure to provide an interpreter in and of itself constitutes a due process violation, this due process claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[4]

### b.    Claim Regarding Grievances

Liberally construing his complaint, Hernandez alleges a claim based on his grievances going unanswered. *See* Docket 1 at 8. The Eighth Circuit has held that no constitutional right is violated by a defendant's failure to process all the grievances a prisoner submits for consideration. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (recognizing that no constitutional right was violated when a prisoner's grievances were not picked up and his grievances were not answered). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Id.* (alteration in original) (citation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th

---

[4] To the extent that Hernandez is alleging that the absence of an interpreter placed his health at risk in such a way that it constitutes deliberate indifference to a serious medical need, that claim will be evaluated below in the context of the Eighth Amendment.

13

Cir. 2014) (per curiam) (explaining that, under *Buckley*, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Hernandez alleges that his "first attempt" at a grievance was "returned to [him] unfiled, and the Unit Sgt. Dickes came to [his] room and yelled at [him] because [he] did it wrong." Docket 1 at 4. But Hernandez alleges that he was able to file a grievance, *id.* at 8, as well as multiple kites, *id.* at 4, and the crux of this claim appears to be that he "did not receive a response to his grievances or his requests for accommodation," *id.* at 8. Therefore, to the extent Hernandez intended to assert a claim regarding his grievances going unanswered, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.     Access-to-the-Courts Claim

Hernandez contends that he did not receive assistance in filing the complaint in the present case, which this Court liberally construes as an access-to-the-courts claim. Docket 1 at 8. Although "the basis of the constitutional right of access to the courts" is "unsettled[,]" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "[t]he Constitution guarantees prisoners a right to access the courts[,]" *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate

assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury because of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Casey*, 518 U.S. at 356); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (holding that the right to access to the courts applies in habeas and civil rights contexts).

Here, Hernandez alleges that he "asked for someone to help him file this complaint, and never received a response." Docket 1 at 8. But Hernandez fails to allege an actual injury as required by *Casey*. Even though Hernandez did not receive assistance, he was successful in filing the complaint in this action. To the extent that Hernadez is alleging that the lack of an interpreter impinged on his access to the courts, this Court has not had difficulty identifying the nature of Hernandez's claims and the factual allegations on which those claims are based despite English not being Hernandez's first language. Therefore, Hernandez has not alleged sufficient facts to show that he has suffered an

15

actual injury, and his access-to-the-courts claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d.    Eighth Amendment Deliberate Indifference Claim

Liberally construing his complaint, Hernandez alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Wasko, Lamb, Haynes, Hamilton, Paul, Tycz, Watson, and McDaniel. Docket 1 at 2, 4–6. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.

1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Hernandez alleges that outside providers informed him that he had cancer and that he would need to have the cancer removed before it spread to other parts of his body. Docket 1 at 6. Therefore, this Court assumes for purposes of screening that Hernandez has alleged a serious medical need. *See Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025) ("A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." (citation omitted)). This Court now turns to the second prong and analyzes whether Hernandez has sufficiently alleged that each of the defendants knew of and deliberately disregarded his medical needs.

17

### i.      Claims Against Supervisory Officials

Construing his complaint liberally, Hernandez alleges an Eighth Amendment deliberate indifference claim against Wasko in her individual capacity for monetary damages and against Lamb in his official capacity for injunctive and declaratory relief. Docket 1 at 2, 4–6. Hernandez also alleges an Eighth Amendment deliberate indifference claim against Haynes, Hamilton, and Tycz in their individual capacities for money damages and official capacities for injunctive and declaratory relief. *See id.* Because Hernandez does not allege that these individual defendants directly participated in the unconstitutional conduct,[5] this Court analyzes claims against Wasko, Lamb, Haynes, Hamilton, and Tycz in their supervisory capacities.

Beginning with Hernandez's claims against Wasko and Lamb, both nonmedical supervisors, Hernandez "must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations or that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (citation modified). When a supervisor does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [the plaintiff], they cannot be held

---

[5] It does not appear from Hernandez's complaint that Haynes, Hamilton, or Tycz were directly involved in providing him care. *See generally* Docket 1. While Hernandez states that he saw a provider at MDSP on August 11, he does not specify who this provider is or if this provider is one of the named defendants. *See id.* at 6.

liable for cruel and unusual punishment in violation of the Eighth Amendment." *Id.* (first alteration in original) (citation modified).

As for the claims against the medical defendants, Haynes, Hamilton, and Tycz, "to be liable under § 1983 the medical defendants had to personally violate [the plaintiff's] rights or be responsible for a systematic condition that violates the Constitution." *Id.* at 645. (citing *Livers v. Schenck*, 700 F.3d 340, 357 (8th Cir. 2012)). "To impose supervisory liability, other misconduct [by the medical defendants] must be very similar to the conduct giving rise to liability." *Id.* (citation omitted).

Here, Hernandez alleges that he "has received a de facto death sentence from the . . . Department of Corrections, and the D.O.C. Health Care Division through its staff, and their inaction, and failure to treat [him] in a timely manner." Docket 1 at 8. Hernandez claims that he filed grievances and made multiple requests for accommodations related to his medical needs.[6] *Id.*

---

[6] Hernandez states that he was denied accommodations under Count III of his complaint, where he alleges that his due process rights were violated. Docket 1 at 8. But Hernandez's claim that he was denied medical accommodations based on his serious medical need is more appropriately evaluated in the context of the Eighth Amendment. *See, e.g., Schaub v. VonWald*, 638 F.3d 905, 916 (8th Cir. 2011) (evaluating claims that a plaintiff was denied various accommodations, such as a handicapped-accessible shower, under the Eighth Amendment); *Holmes v. Minnesota DOC*, No. 23-CV-2969 (PJS/DJF), 2024 WL 5318972, at *11 (D. Minn. Dec. 6, 2024) (evaluating claims that a plaintiff was not provided with an adequate bed, which "seriously exacerbated his medical condition and caused significant pain[]" under the Eighth Amendment ), *report and recommendation adopted by* 2025 WL 71607 (D. Minn. Jan. 10, 2025).

This Court declines to construe Hernandez's claim regarding his requests for accommodations as a claim arising under the Americans with Disabilities Act (ADA) or § 504 of the Rehabilitation Act (RA) because Hernandez has not made any allegations that he is disabled as defined by the ADA or § 504 of the RA. *See Klimek v. CentraCare Health Sys.,* 178 F.4th 1158, 1165 (8th Cir. 2026) (providing definition of a disability

Hernandez alleges that he has made requests for an interpreter to allow him to adequately communicate his medical needs, but that he has not received one.[7] *Id.* Hernandez also states that "medical[]" was put under Wasko's control, *id.* at 6, and that there were policies and implemented by the former warden that "are inhumane, and promote cruel and unusual punishment." *Id.* at 9. Additionally, Hernandez alleges that Haynes "misused his authority to violate [Hernandez's] Rights[]" and that Hamilton "[d]irects Nurse Staff to misuse their authority[.]" *Id.* at 2. Hernandez also alleges that Tycz is the "Nurse Supervisor at MDSP, [and] is responsible for maintaining and implementing the policies and procedures used in the Medical Department." *Id.* at 5.

Although some of Hernandez's allegations may constitute negligence, the Court is unable to determine at this time that Hernadez's claim for deliberate indifference is wholly without merit. Therefore, Hernandez's Eighth Amendment

---

under the ADA (citing 42 U.S.C. § 12102(1)); *Yelder v. Hegseth*, 151 F.4th 943, 953 (8th Cir. 2025) (recognizing that "[t]he Rehabilitation Act uses the same definition as the ADA for an individual with a disability[]" (citing 29 U.S.C. § 705(20)(B))). *See also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (recognizing that suits under the RA or ADA "cannot be based on medical treatment decisions[]").

[7] Hernandez states that he "was unable to communicate his medical issues, like severe pain, and the amount of blood in his urine, as well as being able to understand what medical was doing, and why they were not treating him." Docket 1 at 8. While Hernandez alleges that this violated his "right to due process[,]" this claim is more appropriately construed as an Eighth Amendment deliberate indifference claim. *Id.* "The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Camberos v. Branstad*, 73 F.3d 174, 176–77 (8th Cir. 1995) (recognizing the potential of liability for defendants who failed "to facilitate proper communication" between the plaintiff and prison medical staff).

deliberate indifference claim against Wasko (in her individual capacity for monetary damages), Lamb (in his official capacity for injunctive and declaratory relief), and against Haynes, Hamilton, and Tycz in their official capacities for injunctive and declaratory relief and individual capacities for monetary damages survives § 1915A screening.

### ii.    Claim Against Paul

Liberally construing his complaint, Hernandez asserts an Eighth Amendment deliberate indifference claim against Paul, the Nurse Practitioner at MDSP. Docket 1 at 2, 4–6. Hernandez alleges that Paul is "the MDSP 'doctor' that does whatever she wants." *Id.* at 2. But without further factual allegations, this statement is not enough to allege a cognizable claim against Paul. Even with a liberal construction of Hernandez's complaint, Hernandez makes no allegations that Paul was directly involved in providing him care or otherwise contributing to a constitutional violation. *See generally id.* This statement also does not allege that Paul's failure to train or supervise resulted in a constitutional violation.

Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *Id.* Therefore, Hernandez's Eighth Amendment deliberate indifference claim against Paul in her individual capacity for monetary relief and official capacity for injunctive and declaratory relief is

21

dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1919A(b)(1).

### iii.    Claim Against Watson

Hernandez appears to allege an Eighth Amendment deliberate indifference claim against Watson, a travel nurse at MDSP. Docket 1 at 4–6. Hernandez claims that Watson was deliberately indifferent to his serious medical needs by diagnosing Hernadez with kidney stones over the phone, and without seeing him in person, when he initially complained of pain in his back and blood in his urine. *Id.* Hernandez also contends that Watson should have referred him to a provider. *Id.* at 5.

Beginning with Hernandez's claim that Watson demonstrated deliberate indifference by initially diagnosing him with kidney stones, the Eighth Circuit has made clear that "[d]eliberate indifference is akin to criminal recklessness," and "[n]egligent misdiagnosis does not create a cognizable claim under § 1983." *Cannon v. Dehner*, 112 F.4th 580, 587 (8th Cir. 2024) (quoting *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009)) (last alteration in original). "Inmates have no constitutional right to receive a particular or requested course of treatment, and [a nurse] remain[s] free to exercise her independent medical judgment." *Id.* at 589 (citation modified). "Grossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1242 (quotation omitted). Here, Hernandez does not provide facts that suggest that Watson's kidney stone

22

diagnosis was grossly incompetent or inadequate, or that it constituted intentional maltreatment. *See generally* Docket 1; *see also De Rossitte v. Correct Care Sols.*, LLC, 22 F.4th 796, 803 (8th Cir. 2022) (stating that a plaintiff's "disagreement with their diagnosis, or lack thereof, does not establish a deliberate indifference claim.").

As for Hernandez's claim that Watson should have consulted a provider, a nurse's failure to consult with a provider after initially assessing a plaintiff does not constitute deliberate indifference, and a medical professional does not demonstrate deliberate indifference by failing to follow a prisoner's "more aggressive treatment demands[.]" *Cannon*, 112 F.4th at 589. Hernandez does not provide facts that, "[b]ased on the information available to [Watson] at the time," her treatment of Hernandez was "so inadequate as to amount to intentional maltreatment." *Id.*; *see also Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) (stating that "[d]eliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" (citation omitted)).

Therefore, Hernandez's Eighth Amendment deliberate indifference claim against Watson in her individual capacity for monetary relief and official capacity for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1919A(b)(1).

### iv.      Claim Against McDaniel

Liberally construing his complaint, Hernandez alleges an Eighth Amendment deliberate indifference claim against McDaniel for her failure to schedule timely appointments for Hernandez, which he asserts has "allow[ed] his cancer to spread to other parts of his body." Docket 1 at 4–6.

"A plaintiff can show deliberate indifference in the level of care provided in different ways, including . . . showing a defendant *intentionally delayed or denied access to medical care*." *Dantzler*, 133 F.4th at 846 (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)). When considering claims regarding delays in treatment, "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Id.* at 847 (citation omitted). The Eighth Circuit has recognized that a prison official "delaying medical treatment for 'nonmedical reasons' may amount to deliberate indifference." *Id.* (emphasis and citation omitted).

Here, Hernandez alleges that McDaniel, the scheduling clerk, "has delayed appointments from the start[.]" Docket 1 at 7. He also alleges that the specialist he saw on August 18, 2025, informed him that he would need an MRI, but that McDaniel "failed to get [Hernandez] in the MRI truck which comes to MDSP, for several months." *Id.* at 6–7. Here again, Hernandez must allege that McDaniel "actually knew of, but deliberately disregarded," his serious medical need. *Cannon*, 112 F.4th at 586. But Hernandez provides no facts that McDaniel deliberately delayed scheduling his appointments. On the contrary, Hernandez also attributes delays in his appointments to the "lack of

24

staff[,]" because at certain points MDSP did not have enough staff to accompany Hernandez to hospital appointments. Docket 1 at 7. "[I]n § 1983 suits, '[a]n individual defendant is only liable for his or her own misconduct.'" *Cannon*, 112 F.4th at 590 (second alteration in original) (citation omitted). To the extent that Hernandez is attempting to bring a claim against McDaniel for the delays he experienced due to staffing shortages, he may not do so.

But even if the delays in appointments were "entirely attributable" to McDaniel, Hernandez provides no facts that McDaniel intentionally delayed his appointments. *Id.* at 592. Absent allegations of intentional delay, McDaniel was at most negligent, which is insufficient to state a claim for Eighth Amendment deliberate indifference. *Id.* at 591–92. Therefore, Hernandez's Eighth Amendment deliberate indifference claim against McDaniel in her individual capacity for monetary damages and official capacity for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### v.    Claim Regarding Pain Medication

Liberally construing his complaint, Hernandez also brings an Eighth Amendment claim regarding his access to pain medication. Docket 1 at 6. Hernandez alleges that before he was prescribed hydrocodone, he had to purchase Tylenol himself but was only provided one bottle of Tylenol a month. *Id.* He also states that he is "constipated non stop[,]" but was told that he "had to buy [his] own laxatives." *Id.*

25

To the extent that Hernandez is alleging that buying his own pain medication constitutes a violation of the Eighth Amendment, this claim fails. "It is well established that the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Jackson v. Dameron*, No. 7:22-CV-00090, 2025 WL 877558, at *8 (W.D. Va. Mar. 20, 2025) (internal quotation omitted), *aff'd*, 171 F.4th 641 (4th Cir. 2026). In this context, "a prison official violates the Eighth Amendment by refusing to provide prescribed [over-the-counter] medicine for a serious medical need only if the inmate lacks sufficient resources to pay for the medicine." *Taylor v. Corizon Med. Servs.*, No. 1:11-CV-1436-JMS-DKL, 2013 WL 4678670, at *6 (S.D. Ind. Aug. 30, 2013) (quoting *Hudgins v. DeBruyn*, 922 F. Supp. 144, 150 (S.D. Ind. 1996)).

Although Hernandez alleges that the medical staff "regularly deny pain medication to everyone[]" by requiring inmates to purchase certain medication themselves, Docket 1 at 6, the Eighth Circuit has recognized that inmates may be constitutionally required to pay for their own medical expenses if they can afford to do so. *Blaise v. McKinney*, 187 F.3d 640, 1999 WL 486854, at *1 (8th Cir. 1999) (per curiam) (unpublished table decision); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (holding that "requiring inmates to pay for their own medications if they can afford to do so . . . is not a federal constitutional violation[ ]"). While Hernandez is proceeding in forma pauperis in this action, he makes no allegations that he lacks sufficient funds to pay for the medication. *See* Docket 1 at 6.

Hernandez also appears to allege a deliberate indifference claim because he was limited to one bottle of Tylenol a month before he received a prescription for hydrocodone. *Id.* Hernandez states that "[m]edical staff seem to enjoy inmate pain and suffering, and regularly deny pain medication to everyone." *Id.* But as stated previously, "[g]rossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1242 (quotation omitted). Here, Hernandez does not provide facts suggesting intentional maltreatment or a refusal to provide essential care – he states that he did receive Tylenol, and that he ultimately received hydrocodone. Docket 1 at 6. Instead of deliberate indifference, Hernandez's claim appears to be based on his disagreement with the quantity and type of pain medication he received. *Id.* Disagreement with a course of treatment, however, does not constitute deliberate indifference. *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (citation omitted). *See also Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (observing that a plaintiff's disagreement with receiving over-the-counter pain medications as opposed to prescription pain medications does not constitute deliberate indifference).

Therefore, to the extent that Hernandez intended to allege an Eighth Amendment deliberate indifference claim related to pain medication, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e.    Due Process Claim Based on Medical Care

Hernandez also alleges that defendants violated his right to due process by effectively imposing a "death sentence" through their deliberate indifference to his cancer. Docket 1 at 8. But Hernandez identifies no conduct distinct from the alleged denial of constitutionally adequate medical care. *See generally id.* Because the Eighth Amendment provides the explicit constitutional source of protection against deliberate indifference to a convicted prisoner's serious medical needs, Hernandez may not pursue the same allegations as a separate due process claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that where a particular constitutional amendment provides an explicit source of protection against the challenged government conduct, that amendment— not the more generalized notion of substantive due process—governs the claim). Because Hernandez's claim that he was denied constitutionally adequate medical care was evaluated above in the context of the Eighth Amendment, his due process claim related to his medical care is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### f.    Conspiracy Claim

Liberally construing his complaint, Hernandez alleges a § 1983 civil conspiracy claim against all defendants. Docket 1 at 2, 4, 5, 7. Hernandez alleges that the "Defendants have Conspired against [him] to delay and hamper his treatment, by failing to schedule treatment in a timely manner, allowing his cancer to metastasize, killing him." *Id.* at 7. Hernandez claims that this

28

conspiracy has occurred through his initial misdiagnosis with kidney stones, having his medical appointments delayed, and by defendants being deliberately indifferent to his serious medical needs. *Id.*

A civil conspiracy claim under § 1983 requires that the plaintiff show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (quoting *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1498 (8th Cir. 1997)). Although circumstantial evidence may be used, a plaintiff must allege "specific facts tending to show" that defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). The plaintiff must also show that he has been deprived of a constitutional right or privilege. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)).

Here, Hernandez generally claims the existence of a conspiracy, but he has not alleged any facts indicating that the parties reached an agreement or had a meeting of the minds. Docket 1 at 4, 7. Conclusory allegations that the defendants "are conspiring to kill [Hernandez] through inaction[]" or that the defendants have conspired to "delay and hamper [Hernandez's] treatment" are not enough to state a cognizable claim. *Id.* at 7. *See Iqbal*, 556 U.S. at 678 (citation modified) (providing that a complaint does not suffice "if it tenders

29

naked assertions devoid of further factual enhancement."). Therefore, Hernandez's § 1983 civil conspiracy claim against all defendants is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

## II.    Motion to Appoint Counsel

Hernandez has also filed a motion to appoint counsel. Docket 7. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. *Id.* At this time, Hernandez's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Hernandez is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Docket 7, is denied at this time.

## III.    Request for Immediate Treatment

Hernandez also requests that the Court "[e]nter a temporary order requiring to immediately treat [him.]" Docket 1 at 9. Federal Rule of Civil Procedure 65(b) allows this Court to issue a temporary restraining order without notice if "(A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the

movant's attorney certifies in writing any efforts made to give notice." Fed. R. Civ. P. 65(b). "A temporary restraining order under Rule 65(b) is to prevent immediate and irreparable harm and typically to preserve the status quo until the Court can hear from both sides." *Institute for Free Speech v. Jackley*, 340 F. Supp. 3d 853, 858 (D.S.D. 2018).

Here, Hernandez has not certified in writing what efforts, if any, he made to give notice of a motion for temporary restraining order or why notice should not be required. *See generally* Docket 1. Although Hernandez is proceeding pro se, he is not exempt from complying with the Federal Rules of Civil Procedure, local rules, and court orders. *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (citing *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)); *see also Matthews v. Iowa State Penitentiary*, No. 4:17-CV-00190-RGE-HCA, 2017 WL 11511637, at *2–3 (S.D. Iowa June 28, 2017) (denying pro se prisoner's motion for temporary restraining order for failing to comply with Rule 65(b)); *Kirk of Family Engel v. Volker*, No. 8:25CV390, 2025 WL 1664311, at *2 (D. Neb. June 11, 2025) (noting that one reason for denying pro se plaintiff's motion for temporary restraining order was for not filing affidavit or certification about efforts to give notice and recognizing that "[h]is pro se status is no reason to disregard those requirements.").

Even if Hernandez had fully complied with Rule 65(b), Hernandez does not address the fact that he is not seeking to preserve the status quo. Instead, he seeks affirmative relief akin to the relief he seeks in his complaint. The purpose of preliminary relief, such as a temporary restraining order or

31

preliminary injunction, is to preserve the status quo and prevent irreparable harm until the Court has an opportunity to rule on the merits of the complaint. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 n.5 (8th Cir. 1981) (en banc) (citation omitted). "But where the injunction, like the one requested by [Hernandez], is mandatory . . . like a mandamus, such relief should be granted sparingly." *Noem v. Haaland*, 542 F. Supp. 3d 898, 911 (D.S.D. 2021) (alternation in original) (internal quotation omitted). "The burden on the movant is particularly demanding for a mandatory injunction because 'granting the preliminary injunction will give the movant substantially the relief [he] would obtain after a trial on the merits.'" *Id.* (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)); *see also Flandreau Santee Sioux Tribe v. U.S. Dep't of Agric.*, No. 4:19-CV-04094-KES, 2019 WL 2394256, at *2 (D.S.D. June 6, 2019) ("It is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." (quotation omitted)). A mandatory preliminary injunction should not be granted unless the movant has shown that "the balance of other factors tips decidedly toward the movant." *Haaland*, 542 F. Supp. 3d at 911 (quoting *United Indus. Corp.*, 140 F.3d at 1179). Therefore, to the extent that Hernandez intended to file a motion for temporary restraining order, this motion is denied.

32

## IV.   Conclusion

Thus, it is ORDERED:

1.   That Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims in accordance with Federal Rule of Civil Procedure 25(d).

2.   That Hernandez's claims against Lamb, Haynes, Hamilton, Paul, Tycz, Watson, Dickes, and McDaniel in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

3.   That Hernandez's request for injunctive and declaratory relief against Wasko, Haynes, Hamilton, Paul, Tycz, Watson, Dickes, and McDaniel in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

4.   That to the extent that Hernandez is alleging that the failure to provide an interpreter in and of itself constitutes a due process violation, this due process claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5.   That to the extent Hernandez intended to assert a claim regarding his grievances going unanswered, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

33

6. That Hernandez's access-to-the-courts claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Hernandez's Eighth Amendment deliberate indifference claim against Wasko (in her individual capacity for monetary damages), Lamb (in his official capacity for injunctive and declaratory relief), and against Haynes, Hamilton, and Tycz in their official capacities for injunctive and declaratory relief and individual capacities for monetary damages survives § 1915A screening.

8. That Hernandez's Eighth Amendment deliberate indifference claim against Paul in her individual capacity for monetary relief and official capacity for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1919A(b)(1).

9. That Hernandez's Eighth Amendment deliberate indifference claim against Watson in her individual capacity for monetary relief and official capacity for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1919A(b)(1).

10. That Hernandez's Eighth Amendment deliberate indifference claim against McDaniel in her individual capacity for monetary damages and official capacity for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

34

11. That Hernandez's Eighth Amendment deliberate indifference claim related to pain medication is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

12. That Hernandez's due process claim related to his medical care is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13. That Hernandez's § 1983 civil conspiracy claim against all defendants is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

14. That Hernandez's motion to appoint counsel, Docket 7, is denied at this time.

15. That the Clerk shall send five blank summons forms and Marshal Service Forms (Form USM-285) to Hernandez so that he may cause the complaint to be served upon Wasko, Lamb, Haynes, Hamilton, and Tycz.

16. That Hernandez shall complete and send the Clerk of Court summonses and USM-285 forms for the defendants. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-

35

285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

17. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Docket 1, and this order, upon the defendants.

18. That the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

19. That Hernandez will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

Dated August 7, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

36